UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RON L. MYERS,

                Plaintiff,        **1:16-cv-80-MAT**

                                      **DECISION AND ORDER**

      -vs-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

## I. INTRODUCTION

Represented by counsel, Ron L. Myers ("Plaintiff") has brought this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying his application for disability insurance benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## II. PROCEDURAL BACKGROUND

On August 16, 2012, Plaintiff protectively filed an application for DIB, alleging disability beginning June 15, 2004, due to a steel plate in his neck, cardiovascular disease, a stent in his heart, and "severe out of control diabetes." Administrative Transcript ("T.") 11,

152. Plaintiff's application was initially denied and he timely requested a hearing, which was held before administrative law judge ("ALJ") Donald T. McDougall on March 28, 2014. T. 28-60. In a brief submitted by counsel prior to the hearing, Plaintiff noted that he had amended his alleged onset date to May 22, 2010. T. 207.

On May 12, 2014, the ALJ issued an unfavorable decision. T. 8-27. Plaintiff's request for review was denied by the Appeals Council on December 1, 2015, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2011. T. 13. As such, in order to be successful on his DIB application, Plaintiff must have become disabled prior to the date last insured.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment from his amended alleged onset date of May 22, 2010, through the date last insured. *Id*.

At step two, the ALJ determined that through the date last insured, Plaintiff had the severe impairments of diabetes, coronary artery disease, and a history of cervical spine surgery. *Id.* The ALJ further found that Plaintiff's depressive disorder was non-severe. T. 13-15.

At step three, the ALJ considered Plaintiff's impairments and found that through the date last insured, singly or in combination, they did not meet or medically equal the severity of a listed impairment. T. 15.

Prior to proceeding to step four, the ALJ determined that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), with the following additional limitations: must be able to change positions at least every 30 minutes for a brief period; cannot climb ladders, ropes, or scaffolds; can climb stairs and ramps no more than occasionally; can balance, stoop, kneel, crouch, or crawl no more than occasionally; cannot work around heights or dangerous moving machinery. T. 15.

At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. T. 21. At step five, the ALJ relied on the testimony of a vocational expert to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of bench worker, glass cutter, mail clerk, cashier, and ticket taker. T. 21-22. The ALJ accordingly found that through the date last insured, Plaintiff was not disabled as defined in the Act. T. 23.

## IV. DISCUSSION

### A. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Plaintiff contends that remand of this matter for further administrative proceedings is necessary because: (1) the ALJ's RFC finding is not supported by substantial evidence; and (2) the ALJ failed to appropriately consider Plaintiff's subjective complaints of pain. For the reasons discussed below, the Court finds these arguments without merit.

**B. The ALJ's RFC Finding**

Plaintiff's first argument is that the ALJ's RFC finding was not supported by substantial evidence. In particular, Plaintiff contends that the ALJ failed to incorporate limitations on Plaintiff's abilities to repetitively lift and to look up and down, and that there was therefore no basis for the ALJ to conclude that Plaintiff was capable of light work. This argument is unsupported by the medical evidence of record and lacks merit.

Plaintiff underwent a cervical spine fusion surgery in May 2004, following a motor vehicle accident in 2003. T. 17. Orthopedic Surgeon Dr. Edwards Simmons examined Plaintiff on January 10, 2005, and found that Plaintiff stood with a normal posture and ambulated with a normal gait. His anterior cervical incision was well healed and he had a fairly good range of motion of the cervical spine with seventy percent flexion and extension, as well as seventy percent rotation to the left and right. T. 248. At that time, Dr. Simmons opined that Plaintiff "could be involved in lighter duty work with no repetitive lifting, no lifting over fifty pounds, no repetitive overhead lifting and no prolonged looking upwards or downwards." Tr. 249. On September 15, 2006, Dr. Simmons and his nurse practitioner ("NP") Susan T. Giardino saw Plaintiff again. At that time, Plaintiff reported he was doing "fairly well" and that he manages his mild stiffness and discomfort on a day-to-day basis. T. 244. On examination, Plaintiff walked with a normal gait and posture. He had some limited motion of his cervical

-5-

spine with seventy degrees of flexion, approximately seventy degrees of rotation to the left and right, and had excellent strength in his upper extremities. T. 245. Imaging of his cervical spine showed excellent bone fusion from C5 to C7 with intact instrumentation. *Id.* Dr. Simmons and NP Giardino stated at that time that Plaintiff was capable of "lighter duty work with no heavy lifting over 50 pounds, no repetitive overhead lifting or prolonged looking upwards or downwards," but did not limit Plaintiff to no repetitive lifting as Dr. Simmons did in 2005. They opined he was doing "quite well" but noted he had some limitations in motion which may be permanent, yet tolerable. *Id.*

Plaintiff argues that the ALJ was bound by Dr. Simmons' and NP Giardino's 2005 opinion that he was unable to engage in repetitive lifting and prolonged looking upwards or downwards. As an initial matter, Plaintiff's argument relies on a misstatement of the record. Although Dr. Simmons initially indicated in 2005 that Plaintiff was incapable of repetitive lifting, that restriction was not included in the September 2006 assessment. The ALJ therefore could have reasonably concluded that Dr. Simmons and NP Giardino believed that the limitation on repetitive lifting had resolved by that time. *See Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (ALJ may properly rely on the absence of findings by a physician regarding particular claimed limitations).

Moreover, Dr. Simmons' and NP Giardino's opinions were issued in 2005 and 2006, several years before the amended onset date of May 22, 2010. More recent physical examinations showed that Plaintiff's range

of motion had continued to improve. For example, on December 20, 2012, Plaintiff was seen by Dr. Thomas McTernan, Jr. and had only a moderately limited range of motion in his neck. T. 332. "When there is a conflict in the medical evidence, we leave it for the finder of fact to resolve, and '[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.'" *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (*quoting Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002)). The ALJ's decision to base the RFC on Plaintiff's more recent physical examinations rather than the more remote opinions of Dr. Simmons' and NP Giardino was well within his discretion and was supported by the record.

Additionally, and as the Commissioner correctly notes, any error by the ALJ in failing to include limitations in Plaintiff's abilities to repetitively lift or to engage in prolonged looking downward or upward was harmless. At the hearing, the VE identified three representative jobs (mail clerk, cashier, and ticket taker) whose occupational definitions do not include repetitive lifting, or prolonged looking up or down. Even if such limitations had been included in the RFC, the jobs identified by the VE would remain viable.

For the foregoing reasons, the Court concludes that the ALJ's determination not to include limitations on repetitive lifting and prolonged looking upwards or downwards did not constitute reversible error. Accordingly, remand is not warranted on this basis.

### C. Assessment of Plaintiff's Subjective Complaints

Plaintiff's second argument is that the ALJ failed to properly consider and assess his subjective complaints. Plaintiff claims that, contrary to the ALJ's findings, the record demonstrates that Plaintiff has chronic, severe pain and limited daily living activities, and moreover, that the ALJ was required to reconcile any inconsistencies with Plaintiff's testimony about his daily activities and his treatment. The Court disagrees.

As a threshold matter, the Court notes that an ALJ is entitled to great deference when making credibility findings and can only be reversed if those findings are patently unreasonable. *Andrisani v. Colvin*, No. 1:16-CV-00196 (MAT), 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017). "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 13-CV-6308(MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted).

In his decision, the ALJ found Plaintiff's allegations of pain were inconsistent with his treatment history, and further noted that the medical record demonstrated that Plaintiff was frequently noncompliant with treatment recommendations. T. 19. When assessing a Plaintiff's credibility, an ALJ is instructed to consider whether his

subjective complaints are "consistent with the medical and other objective evidence." *Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015). "The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Cichocki v. Astrue*, 534 Fed.Appx. 71, 76 (2d Cir. 2013) (internal quotation omitted). Here, the ALJ met these requirements and sufficiently explained his reasoning in support of his finding that Plaintiff's statements were not entirely credible.

The ALJ initially noted that Plaintiff had been non-compliant with prescribed treatment. This conclusion is well-supported by the record. In March 2010, Plaintiff presented to a new primary care physician in Florida for treatment, complaining of weight loss and blurred vision. He admitted he had been out of insulin for two weeks. T. 341. In October 2010, treatment records show Plaintiff came into his physician's office to pick up prescriptions and he was advised to make an appointment. T. 339. He did not return to the office until February 2011, when he admitted he had not taken any of his medications, including his insulin, for the past three months. T. 338. Plaintiff had a follow-up appointment two weeks later and reported he was compliant with his medications and his blood sugars were "doing great" with fasting sugars below 120. Plaintiff had no complaints and no abnormal

clinical finding were noted on exam. T. 337. Plaintiff returned in October 2011 for new prescriptions, reporting he had run out of medication several weeks prior. T. 336. The record indicates Plaintiff had no medical treatment or appointments again until December 2012, when he reported to his primary care physician in New York that he had recently moved back from Florida and he had lost over fifty pounds since July, when he stopped taking all of his medications. T. 331. Plaintiff's well-documented history of non-compliance with respect to the treatment for his diabetes was an appropriate factor for the ALJ to take into account in assessing his credibility. *See*, *e.g.,* Weed *Covey v. Colvin*, 96 F. Supp.3d 14, 33 (W.D.N.Y. 2015) (ALJ properly found credibility diminished where claimant failed to regularly attend appointments); *Lasalle v. Colvin*, No. 14-CV-872-JTC, 2016 WL 420589, at *6 (W.D.N.Y. Feb. 4, 2016) ("[T]he ALJ was permitted to consider plaintiff's noncompliance with treatment as a factor weighing against her credibility.").

The ALJ's conclusion that Plaintiff's subjective complaints were inconsistent with the medical evidence of record is also well-supported. For example, at the hearing, Plaintiff testified he has problems with stairs, can sit or stand for no more than twenty minutes at a time, cannot lift more than ten pounds, and becomes dizzy when walking even short distances. T. 37-38. However, on review of Plaintiff's medical records, the ALJ found only one mention of dizziness, which was accompanied by other symptoms suggestive of a

possible cardiac problem he was having in May 2010. T. 19-20, *see also* T. 339. At that time, Plaintiff was referred to the emergency room for an evaluation; however, nothing in the record indicates Plaintiff went to the emergency room or received any testing for his complaints. Treatment records from December 2012 through December 2013 note Plaintiff repeatedly denied vertigo and difficulty concentrating. *See Id.*, T. 313-32, 363.

Similarly, in direct contrast to Plaintiff's testimony at the hearing, in 2010 Plaintiff reported to his primary care physician he was walking three miles, three times per week. T. 341-42. From December 2012 through March 2013, the record shows Plaintiff denied trouble walking. T. 322-34. In June 2013, Plaintiff requested his primary care physician complete disability papers documenting his disabilities, including coronary artery disease, diabetes, and past cervical spine fusion. At that time, Plaintiff reported he was having trouble walking, but the correlating exam notes indicate no vertigo and normal musculoskeletal findings of his lower extremities, including no clubbing, cyanosis or edema bilaterally and full motor strength of 5/5 bilaterally. *See* T. 319-21. Subsequent exams produced similarly unremarkable findings through the end of 2013. *See* T. 312-18. The ALJ properly took these inconsistencies between Plaintiff's testimony and his medical record into account in finding Plaintiff less than fully credible.

Finally, the ALJ noted that Plaintiff's testimony was inconsistent with his reported activities of daily living. "An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination." *Pennock v. Comm'r of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016). "The issue is not whether [Plaintiff's] limited ability to undertake normal daily activities demonstrates [his] ability to work. Rather, the issue is whether the ALJ properly discounted [Plaintiff's] testimony regarding [his] symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.*, 5:12-cv-1795 (MAD/CFH), 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014). Plaintiff reported in his Function Report that he occasionally does some cooking and light housework. He also reported he walks in stores while shopping with his wife and is able to drive, though his wife usually drives. T. 177-83. It was proper for the ALJ to consider these reported activities of daily living in assessing Plaintiff's credibility. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(I).

For the foregoing reasons, the Court finds no error in the ALJ's assessment of Plaintiff's credibility. The Court accordingly finds that remand is not warranted on this basis.

V. **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 7) is denied and the Commissioner's motion for

judgment on the pleadings (Docket No. 13) is granted.  Plaintiff's complaint is dismissed in its entirety with prejudice.  The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                    **S/Michael A. Telesca**

                                   HON. MICHAEL A. TELESCA
                                   United States District Judge

Dated:    May 25, 2018
           Rochester, New York